IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 21- |
| v. | : | DATE FILED: |
| DANIEL OWENS | : | VIOLATIONS:<br>18 U.S.C. § 371 (conspiracy to commit an offense against the United States – 1 count)<br>Notice of forfeiture |
| | : | |

**I N F O R M A T I O N**

**COUNT ONE**

(Conspiracy to Commit an Offense; to Pay and Receive Kickbacks)

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times material to this Information:

**The Medicare Program**

1. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries." Medicare was divided into multiple parts with separate coverages: Part A covered hospital inpatient care, Part B covered physicians' services and outpatient care, Part C covered Medicare Advantage Plans, and Part D covered prescription drugs.

2. Physicians, clinics, and other health care providers, including laboratories, all of which provided services to Medicare beneficiaries, were able to apply for and obtain a "provider

1

number."  A health care provider that received a Medicare provider number was able to file claims with Medicare tgo obtain reimbursement for services provided to beneficiaries.

3. A Medicare claim was required to contain certain important information, including: (a) the Medicare beneficiary's name and Health Insurance Claim Number ("HICN"); (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI").  The claim form could be submitted in hard copy or electronically.

4. Medicare only paid for services that were medically necessary and reasonable, and which were actually provided as represented.  Medicare did not pay claims that were procured based on the payment or receipt of kickbacks and bribes.

5. Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

**Diagnostic Testing**

6. Medicare Part B covered medical testing by clinical laboratories, including cancer genomic ("CGx") testing.  CGx testing used DNA sequencing to detect mutations in genes that could indicate a higher risk of developing certain types of cancers in the future.  CGx testing was not a method of diagnosing whether an individual presently had cancer.

7.     Generally, in order to have CGx tests conducted, an individual completed a buccal or nasopharyngeal swab, or a respiratory sample, to collect a specimen, which specimen was then transmitted to a laboratory for testing.

8.     Medicare did not cover diagnostic testing that was "not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Title 42, United States Code, Section 1395y(a)(1)(A). Except for certain statutory exceptions, Medicare did not cover "examinations performed for a purpose other than treatment or diagnosis of a specific illness, symptoms, complaint or injury." Title 42, Code of Federal Regulations, Section 411.15(a)(1). Among the statutory exceptions Medicare covered were cancer screening tests such as "screening mammography, colorectal cancer screening tests, screening pelvic exams, [and] prostate cancer screening tests." *Id*.

9.     If diagnostic testing was necessary for the diagnosis or treatment of illness or injury, or to improve the functioning of a malformed body member, Medicare imposed additional requirements before covering the testing. Title 42, Code of Federal Regulations, Section 410.32(a) provided, "All diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem." "Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary." *Id*.

10.    Because CGx testing did not diagnose cancer, Medicare only covered such tests in limited circumstances, such as when a beneficiary had cancer and the beneficiary's treating physician deemed such testing necessary for the beneficiary's treatment of that cancer. Medicare

did not cover CGx testing for beneficiaries who did not have cancer or lacked symptoms of cancer.

### The Defendant and Related Individuals and Entities

11.  Defendant DANIEL OWENS was the owner of People Loving People, Inc. ("People"), a corporation located in Sanford, North Carolina that purportedly provided marketing and consulting services.

12.  Laboratory 1, a corporation organized under the laws of Florida, was a laboratory located in Florida that purportedly provided CGx testing to Medicare beneficiaries.

13.  Individual 1 was the owner and operator of Laboratory 1.

14.  Individual 2 was the owner and operator of Company 1, a company located in Columbus, Ohio that purportedly provided marketing and consulting services.

15.  Individual 3 was the owner and operator of Company 2, a company located in Atlanta, Georgia that purportedly provided marketing and consulting services.

16.  Individual 4 resided in Feasterville, Pennsylvania.

### The Kickback Conspiracy

17.  From at least in or about January 2020 through in or about April 2020, defendant DANIEL OWENS, together with others, including Individual 1, Individual 2, Individual 3, Individual 4, and others known and unknown to the United States Attorney, conspired to offer, pay, solicit, and receive illegal heath care kickback payments in exchange for the referral of patients for CGx tests that were submitted to Medicare for reimbursement.

18.  Defendant DANIEL OWENS, Individual 3, and Individual 4 were part of a network of recruiters throughout the United States, managed by Individual 2, who targeted Medicare beneficiaries with marketing campaigns to induce them to submit to CGx tests,

regardless of medical necessity.

19. Defendant DANIEL OWENS and other sub-recruiters, including Individual 3 and Individual 4, were paid per-swab kickbacks and bribes in exchange for providing and collecting swabs for CGx tests.

20. Defendant DANIEL OWENS received kickbacks and bribes from Individual 1 and Individual 2 in exchange for the referral of CGx tests to Laboratory 1.

21. Defendant DANIEL OWENS also received kickbacks and bribes from Individual 1 and Individual 2 in exchange for CGx tests provided by others that he introduced to Individual 1 and Individual 2, including Individual 3. These payments were referred to as an "override."

22. In an effort to conceal the scheme, defendant DANIEL OWENS entered into a sham contract with Individual 1, which disguised the kickbacks and bribes as payments for purported marketing services. Defendant OWENS also sent sham invoices to Individual 1 and Individual 2 which corresponded with the per-swab kickback amount.

23. In total, defendant DANIEL OWENS, together with his co-conspirators, solicited and received approximately $216,250 in kickbacks and bribes from Individual 1 in exchange for providing signed doctors' orders prescribing CGx tests. Defendant OWENS utilized a First Bank account number ending in 4533, held in his name, and a Navy Federal Credit Union account number ending in 1502, held in the name of People, to receive kickbacks and bribes. Defendant OWENS personally received approximately $10,961 in kickbacks and bribes.

24. In connection with the kickback scheme from in or about January 2020 to in or about April 2020, Laboratory 1 submitted and caused to be submitted approximately $4.6 million in claims to Medicare for CGx tests that were procured through the payment of illegal kickbacks and bribes and was paid approximately $1.1 million. Of this amount, approximately $933,000

billed and $183,000 paid was attributable to CGx samples that were submitted by defendant DANIEL OWENS and Individual 3.

25.     From at least in or about January 2020 through in or about April 2020, in the Eastern District of Pennsylvania, and elsewhere, defendant

**DANIEL OWENS**

knowingly and willfully conspired with others known and unknown, including persons known to the United States Attorney as Individual 1, Individual 2, Individual 3, and Individual 4, to commit an offense against the United States, that is, by conspiring to: (1) solicit and receive kickbacks, directly and indirectly, overtly and covertly, in return for referring Medicare beneficiaries to Laboratory 1 for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part under Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(1); and (2) offer and pay kickbacks, directly and indirectly, overtly and covertly, to persons to induce the referral of Medicare beneficiaries to Laboratory 1 for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part under Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(2).

OVERT ACTS

26.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of Pennsylvania, and elsewhere, defendant DANIEL OWENS, together with other co-conspirators, committed and caused to be committed, among others, the following overt acts:

(a)     On or about February 19, 2020, defendant DANIEL OWENS received wire transfer 20200219000007, in the approximate amount of $6,800, into First Bank

account number ending in 4533, an account held in his name, drawn on a Park National Bank account number ending in 6178, an account held in the name of Company 1.

    (b)  On or about March 3, 2020, defendant DANIEL OWENS received wire transfer 20200303000076, in the approximate amount of $1,761, into First Bank account number ending in 4533, an account held in his name, drawn on a Park National Bank account number ending in 6178, an account held in the name of Company 1.

    (c)  On or about April 30, 2020, defendant DANIEL OWENS received wire transfer number 256074974, in the approximate amount of $2,400, into Navy Federal Credit Union account number ending in 1502, an account held in the name of People, drawn on a Bank of America account number ending in 4838, an account held in the name of Laboratory 1.

    All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

  1. As a result of the violation of Title 18, United States Code, Section 371, and Title 42, United States Code, Section 1320a-7b, set forth in this Information, defendant

**DANIEL OWENS**

shall forfeit to the United States of America any property, real or personal, that constitutes, or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offense, including, but not limited to, the sum of $10,961.

  2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

_Ronald Sarachan_ for
_____
JENNIFER A. WILLIAMS
Acting United States Attorney
Eastern District of Pennsylvania


JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division

*No. 2021R00485*

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

DANIEL OWENS

INFORMATION

18 U.S.C. § 371 (conspiracy to pay and receive kickbacks – 1 count)

Notice of Forfeiture

A true bill.

_____
Foreman

Filed in open court this _____ day,
Of _____ A.D. 20____

_____
Clerk

Bail, $ _____